v. Baptist Memorial Health Care et al. If you had a good summary judgment position on the merits of her case, without regard to everything else, why did you do all that discovery? Why didn't you just bring the motion? If I could control the court's docket, I probably would have liked to have done it that way. Unfortunately, the court certifies the class and sets a discovery timeline for us to do this, and we did all the discovery all in one whelp. And frankly, I wouldn't tell you that I was certain I was going to get summary judgment in the White case. I mean, it was a case, and that's why I went before the Supreme Court, that I think it's correctly decided, but it wasn't one that I would have gambled, not doing what I needed to do to represent. Well, could you have taken her debt, done your research, and filed a motion? Perhaps, Judge White. At the time, it wasn't so clear exactly how that outcome would be. I don't remember the order of things sitting here today. Why? I mean, looking back, that's an excellent question, and I can't answer whether we could have done something different, maybe should have gone to Judge Mays and said, hold up on this. It stretched out much too long, and my client would have been certainly better served if we could have made it shorter. There's no question about that. You said you were going to circle back to the issue of ability to pay in front. Indecency, Judge Cole. The thing here is that Ms. White, and contrary to what Mr. Crone represents, she submitted something, and I don't have what she submitted before the hearing on the clerk, and the clerk said, not enough. So between the time the clerk ruled and the time Judge Mays addressed this, she submitted a supplemental affidavit of financial status, and it's in, I don't know how it's in the court's record, but it's document number 278 in the district court record below, and it was filed on December 29, 2011, and hopefully that will help your staff be able to find that, but it's a supplemental affidavit, and she says that she was in a car accident and that she had broken her ankles and she was in the hospital for an undetermined amount of time, and she goes on and says that she had a 401k account of $10,000 and that she would be impoverished. There's no documents attached. There's no financial records attached, and what Judge Mays, and you have to put that in the context of she'd already been told not enough by the clerk, and I can't remember what she submitted, but this is a supplemental affidavit, so my belief standing here today is that it was a prior affidavit, but that she'd been told not enough, and Judge Mays looked at that and in his discretion said not enough, and if you look at the case law on this, in fact, the Frye case cites the Chapman case from the Eleventh Circuit which talks about the substantial evidence necessary, and there's a case from the Western District Tuggle which I think's cited in the briefs where Judge Tide... Well, was there supposed to be a hearing? You know, I don't know what there should be. There was no hearing. It was handled on the briefs before Judge Mays. We didn't have a hearing. Could he have had a hearing? Yes. My experience with our district courts today is more often we do things by paper, and it was extensively briefed, but there was no oral hearing or anything of that nature. But what more would she need? Let me finish. Yeah, I'm sorry. She listed, what, income, expenses, assets generally, a 401K of $10,000 and no other assets to speak of? She didn't list expenses in this affidavit. I have it here, Judge Cole, if you'd like to see it. What is it that she would need to have submitted that she did not? Well, I don't want to try to... Judge Mays didn't say what he thought she would need. Yeah, what I would have looked for, I mean, in my mind, would have been financial records, you know, to back up what she said in terms of what her bank account is. But the one thing that I think that is distinct here in looking at the other cases is it's not about an immediate ability to pay it. It's an ability, can you pay it at some time in the future? And I would call to your attention, Judge Cole, you were on a panel in the Singleton case. This goes back to 2001, and I have the cite for that because I couldn't find it in the briefs. But just a moment, I'll give you the cite for Singleton. I have it, but if you want to... Okay, well, if you remember, then I'll not waste more time looking for it. But in Singleton, the court went through a great analysis of a prisoner, an incarcerated prisoner, about the discretion of the court to award costs. And one of the factors looking at is not only current ability to pay but future ability to pay. Well, the costs there that we're normally talking about are $150 to file an appeal. This one was about $4,000 or $5,000 in that case, so it was significant. And it wasn't $36,000, and I understand the difference, sure. But I think in terms of looking at it from your standard today, was it an abuse of discretion? And I submit that it was not abuse of discretion. How do you have a system where somebody brings a Fair Labor Standard Act in good faith, you bring in the other parties, you lose just on the merits of your pace, and you have to pay $34,000? Well, two thoughts about it, Judge White. And one thing, when I went to the first conference with Clerk Gold about this, we discussed at length whether this should be Mr. Frye's expense in that case or Mr. Frye and the class members. And what I knew going into that hearing was no notice had been given formally by the court. What I didn't know is what arrangements had been made or what notice had been given by a plaintiff's counsel with these people as they opted in because they became their clients. And what came out of that was there had been no notice. And I think that's a decision that people who choose to be representative parties are entitled to make, that, you know, I'm going to bear the risk or I'm not going to bear the risk. I'm going to be a representative party or I'm not going to be a representative party. Those are all decisions that, you know, from the standpoint of the employer, we're not in a position. And had there been notice here, I think it would have been very fair to apportion these costs among the class, which have been a couple hundred bucks at most. Since there was not notice, might it be fair to hit Ms. White with whatever her ratio of the costs is and let the hospital or the health care system pick up the rest of it? That says to her and to anybody else, stop and think before you file a suit like this, but doesn't tax her with the entire amount. Applying the factors of White v. White, Your Honor, I think that had Judge Mays decided that, I'd be carrying a big, heavy oar to try to row up the hill to convince you to say that was an abuse of discretion. I think that the court could have done that. That's not what Judge Mays did. Is there any possibility that there could be a settlement to that effect? There have been. I'm not permitted to. There have been discussions. But, yes, there's always a possibility of settlements, Your Honor. Okay. Thank you. Thank you very much. I appreciate your time. Mr. Crowe. Thank you, Your Honor. I think in my two minutes of rebuttal, I think the most important thing to focus on is the difference between the FLSA and just about any other federal statute. Rule 23 does not apply. I discipline myself never to refer to these groups as classes. I always refer to them as collectives because it's different, and it's different in two very important contexts that come into play in this particular circumstance. First place it's different is the opt-ins don't get a relation back. They have to opt in in order to toll their statute of limitations, and that has to be done early. And the second thing is in a class action, you don't take the depositions of putative class members. So there wouldn't have been 20 or 30 depositions of putative class members. And as it turns out, those depositions, as Judge White noted, those depositions, as it turned out, were not necessary for the outcome of this case. And when you take all of that into consideration and you take the particular charism of the FLSA and the particular procedural posture and choices that it makes for plaintiffs, there's no way a plaintiff can avoid going in and creating this group of opt-ins early, early on, as opposed to a Rule 23-named plaintiff who can do it, I don't want to say at their leisure, but they can let discovery take its course and it's not going to be as inflated as this particular collective was. And that's an operation of this very part of the statute that contains both the Rule 23 variants and what I contend is the Rule 54 variants. The last thing I'll say is Mr. Prather mentioned incentive payments. I have been doing this a long time. I've never seen a collective action named representative get $36,000 in incentive payments. If you're going to wager a dollar for a dollar, that's not a good use of your time. So, I mean, if you're going to say that, then incentive payments ought to be $90,000 or $100,000, considering how much risk they're taking on. And those two things don't balance out. So, again, I would urge the court to reverse the district court. I appreciate the court's time. Thank you. Okay. Thank you, counsel, both of you. The case will be submitted. I should at least mention, I guess I'd be remiss if I didn't, that the court does have an in-house mediator, actually a mediation staff. You're probably both well aware of that office headed by Paul Calico, who is a very able mediator. He's got an able staff. So, not suggesting at all that you should seek services from the mediation office, but they are there. The panel has no involvement in the mediation process. We're not made aware of any discussions. Those are confidential between you and the mediation office. So, it's up to you if you decide that you want to make contact. I'm raising it only because, Mr. Prather, you said there have been some discussions, and if you choose to go that route, then maybe there will be some benefit to all parties. Again, I'm not suggesting you do that. We will proceed forthwith with what we have to do as a panel, and if you do pursue settlement and it's productive, someone will let us know, I guess.